**PHILLIPS, GOLDMAN & SPENCE, P.A.**

JOHN C. PHILLIPS, JR.
STEPHEN W. SPENCE
ROBERT S. GOLDMAN
LISA C. MCLAUGHLIN
JAMES P. HALL
DAVID A. BILSON
STEPHEN A. SPENCE
MEGAN C. HANEY

ATTORNEYS AT LAW
PENNSYLVANIA AVE. AND BROOM ST.
1200 N. BROOM STREET
WILMINGTON, DE 19806

(302) 655-4200 (P)
(302) 655-4210 (F)

June 11, 2015

**VIA HAND DELIVERY and CM/ECF**
The Honorable Sherry R. Fallon
United States District Court
  for the District of Delaware
844 North King Street
Wilmington, DE 19801

      Re:    *iCeutica Pty Ltd., et al. v. Lupin Limited, et al.*, C.A. No. 14-1515-SLR-SRF

Dear Judge Fallon:

I write on behalf of Defendants Lupin Limited and Lupin Pharmaceuticals, Inc. (collectively, "Lupin") in response to the letter brief submitted yesterday by Plaintiffs (D.I. 34).

### I. Lupin Limited's In-House Legal Representative Should Be Permitted Access to Plaintiffs' Confidential Information

"A party to litigation has a more fundamental interest in access to information than retained counsel." *Phillip M. Adams & Assoc., LLC v. Dell, Inc.*, No. 1:05-cv-64, 2006 WL 4523602, at *6 (D. Utah June 12, 2006). For this reason, it is well settled that the party opposing disclosure has the burden of proving the competitive harm that would befall it by virtue of disclosure. *See Centurion Indus., Inc. v. Warren Steurer & Assoc.*, 665 F.2d 323, 325 (10th Cir. 1981); *see also In re Deutsche Bank Trust Co. Ams.*, 605 F.3d 1373, 1378 (Fed. Cir. 2010) ("A party seeking a protective order carries the burden of showing good cause"); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) ("Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing.").

The legal representative whom Lupin proposes be permitted access to Plaintiffs' confidential information, Rachita Naidu, is employed by the Intellectual Property Management Group of Lupin Limited. Though Plaintiffs repeatedly refer to Ms. Naidu as a "business person,"[1] her

---

[1] Despite Plaintiffs' repeated inexplicable reference to "business people," D.I. 34 at 1, Ms. Naidu is the sole in-house legal representative that Lupin Limited has disclosed.

1

responsibilities at Lupin are solely limited to management of intellectual property and patent litigation. Ms. Naidu was not involved with clearance of Lupin's generic Zorvolex® product, and she agrees not to participate in any patent prosecution related to Lupin's ANDA product going forward. While Ms. Naidu is not an attorney, her responsibilities are legal, and she serves essentially the same role as a U.S. in-house counsel. Additionally, Ms. Naidu is willing to sign the undertaking attached to the proposed protective order and to submit to the jurisdiction of this Court. Ms. Naidu has previously been permitted access to confidential information in other cases in the U.S. with no allegations of improper use or disclosure of that confidential information. *See, e.g.*, *Horizon Pharma, Inc. v. Dr. Reddy's Laboratories Inc.*, No. 3:11-cv-04275, D.I. 73 (D.N.J. Mar. 24, 2015) (permitting Ms. Naidu access to "all Protected Material (i.e. Confidential and Attorney Confidential)") (Exhibit A).

Other than bald allegations concerning Ms. Naidu's title (i.e., not an attorney) and residency in India, Plaintiffs have pointed to nothing to support their position that she should not be permitted access to their confidential information, nor have they pointed to any reason to believe that inadvertent disclosure is more likely with Ms. Naidu that it would be with any other in-house legal representative. Indeed, it is unclear what potential concerns Plaintiffs have, given that this litigation involves a product that is already on the market (Zorvolex®), and Plaintiffs have thus far refused to produce any documents relating to any product other than Zorvolex®. Having failed even to articulate a concrete concern about Ms. Naidu's access to their confidential information, Plaintiffs have not carried their burden of proving that disclosure to Ms. Naidu would harm them.

A primary consideration in whether to permit in-house legal representatives to access an opposing party's confidential information is whether that representative is involved in competitive decisionmaking. *See, e.g.*, *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468-69 (Fed. Cir. 1984). In *U.S. Steel*, the Federal Circuit set forth a standard focused on the representative's activities—not the representative's title or country of residency. *Id.* "Thus the factual circumstances surrounding each individual counsel's *activities, association, and relationship* with a party . . . must govern any concern for inadvertent or accidental disclosure." *Id.* at 1468 (emphasis added).

Plaintiffs' proposed set of conditions for allowing Ms. Naidu to review their confidential information is unreasonable. *See* D.I. 35-2, Plf. Ex. B. As stated above, Ms. Naidu is willing to sign the undertaking attached to the proposed protective order and to submit to the jurisdiction of this Court. But the remainder of Plaintiffs' conditions would prohibit outside litigation counsel from sending any confidential information to Ms. Naidu "without the express written consent of either Plaintiff." *Id.* at 1. Such conditions impose a significant burden on Lupin and make it unreasonably difficult for Lupin to participate in the preparation of its own defense. Lupin's outside litigation counsel communicates with Ms. Naidu daily and Ms. Naidu reviews every filing made in this lawsuit. That another court has imposed those conditions does not mean that this Court should do the same; the individual circumstances of this case must be considered, *see U.S. Steel Corp*, 730 F.2d at 1468, and Plaintiffs have articulated no concrete basis for concern of inadvertent disclosure.

Moreover, Plaintiffs have already displayed a tendency to overdesignate confidential information. For example, Plaintiffs originally marked their first set of interrogatory responses, which contained no confidential information, as confidential. Plaintiffs only de-designated them upon inquiry by counsel for Lupin. *See* Ex. B (5/31/15 Email from Flanagan to Lea). Similarly, when Plaintiffs have designated material as confidential, they have failed to serve redacted copies along with the unredacted copies, thereby making it difficult for Lupin's outside counsel to share even nonconfidential information with Lupin. *See* Ex. C (6/5/15 Email from Hufnal to Lea). Plaintiffs' tendency to overdesignate and delay service of redacted copies would compound the burden on Lupin imposed by the unreasonable conditions proposed by Plaintiffs.[2]

Plaintiffs' argument that they would have no recourse for violation of the protective order is meritless. Lupin Limited is itself a party to this case and is subject to the Court's authority and sanctions power. Likewise, by signing the undertaking attached to the protective order and submitting to the jurisdiction of this Court, Ms. Naidu herself would be subject to the Court's authority. *See In re Incretin Mimetics Prod. Liability Litig.*, MDL No. 13md2452, 2015 WL 1499167, at *11 (S.D. Cal. Apr. 1, 2015) ("Rule 37 grants courts wide discretion in fashioning remedies for violations of discovery orders such as the protective order.").

Plaintiffs' argument that Lupin Limited's in-house legal representative does not need access to Plaintiffs' confidential information in order to manage this case is incorrect. *See* D.I. 34 at 3. The circumstances under which the alleged inventions were conceived and developed will likely be relevant to the validity of the patents. Contrary to Plaintiffs' assertions, D.I. 34 at 3, Plaintiffs' actually do contend that their own confidential information is relevant to the issue of infringement. Indeed, in their infringement contentions, Plaintiffs cited their own confidential information in an effort to show that Lupin's ANDA Product infringes the patents. *See* Ex. C.

Lupin Limited is entitled to meaningfully participate in the preparation of its own defense, and this Court should reject Plaintiffs' efforts to prevent Lupin Limited from doing so. *See Standard Space Platforms Corp. v. United States*, 35 Fed. Cl. 505, 509 (1996) ("[T]o deny plaintiff the right to have its own president assist in its litigation, given defendant's flimsy showing, could well border on a denial of due process . . . . [Plaintiff's president] will be bound by the terms of the protective order . . . and will be subject to the contempt powers of this court should he violate its order."); *Intervet, Inc. v. Merial, Ltd.*, 241 F.R.D. 55, 57-58 (D.D.C. 2007) (finding that "responsibility as head of intellectual property" including "legal, administrative, or organizational" responsibilities do not implicate competitive decision making); *MGP Ingredients, Inc. v. Mars, Inc.*, 245 F.R.D. 497, 501 (D. Kan. 2007) ("In defendants' motion for a protective order, defendants made categorical arguments that they would be harmed by the disclosure but they really did not discuss in any meaningful detail how they would suffer the nature or degree of harm that would warrant forcing on plaintiff the far more cumbersome discovery process that they propose.").

---

[2] While Lupin does not agree that the model protective orders cited by Plaintiffs are relevant, it is worth noting that both orders include provisions explaining that overdesignation may "expose the Designating Party to sanctions." *See* D.I. 35-5, Plf. Ex. E, ¶ 5.1; *see also* D.I. 35-6, Plf. Ex. F, ¶ 2.1 (similar language).

II.     **Plaintiffs' Counsel and Representatives Who Have Access to Lupin's Confidential Information Should Be Excluded from PTO Proceedings**

The Federal Rules "confer[] broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co v. Rhinehart*, 467 U.S. 20, 36 (1984). Thus, the manner in which other courts have handled prosecution bars does not control this Court's analysis. In any event, this Court has entered protective orders that include prosecution bars similar to that requested by Lupin. *See, e.g., Versata Software, Inc. v. Callidus Software, Inc.*, No. 12-931 SLR, 2014 WL 1117804 (D. Del. Mar. 12, 2014) (Robinson, J.); *Inventor Holdings, LLC v. Wal-Mart Stores Inc.*, No. 14-cv-0096, 2014 WL 4370320, at *3 (D. Del. Aug. 27, 2014). Lupin submits that this case is similar to *Versata*. There, Judge Robinson ordered:

> Any attorney, consultant, witness, or other person who views highly confidential source code prior to trial shall not participate in any patent application prosecution or any post-grant review proceeding for the particular technology field at issue in the patents-in-suit, nor consult with attorneys or experts participating in any such prosecution or post-grant review proceeding. *Id.* at *2.

Documents concerning Lupin's formulation are analogous to source code in that they precisely map out the contours of Lupin's ANDA Product. Those documents could give Plaintiffs an unfair advantage in any PTO proceeding, even if Plaintiffs' representatives are not formally involved in drafting or amending claims. For instance, knowing Lupin's formulation could enable Plaintiffs to structure validity arguments in a PTO proceeding in a way that does not harm their infringement arguments in district court, which Plaintiffs would be unable to do if they did not have access to Lupin's confidential information. *Cf.* Ex. D (Patent Case Mgt. Judicial Guide, Ch.4, at 4-11) (expressing concern about prosecution bars that carve out reexams because, "although patent claims may not be broadened during reexamination proceedings, an attorney with knowledge of a competitor's highly sensitive information may use that information (perhaps inadvertently) to fashion the narrower claims in a way to avoid key prior art while capturing a competitor's product (or future product).")

Thus, contrary to Plaintiffs' assertion, D.I. 34 at 4, good cause does exist for prohibiting Plaintiffs' representatives with access to confidential information from participating in post-grant review proceedings.[3] Accordingly, Lupin requests that the Court adopt the analysis in *Versata* and order that Plaintiffs' representatives who have access to Lupin's confidential information may not participate in PTO proceedings. *See Inventor Holdings*, 2014 WL 4370320, at *3 ("Under the circumstances, because [plaintiff] has not persuaded me that the risk of inadvertent disclosure of highly confidential information would not occur under any of the scenarios that it requests be permitted, a limited prosecution bar exemption similar to the one . . . in *Versata Software* seems appropriate in this case.").

---

[3] Lupin disagrees with Plaintiffs' characterization of Lupin's offer to compromise. *See* D.I. 34 at n.2. Lupin's offer was reasonable and made in an effort to avoid burdening the Court. Plaintiffs' unnecessary reference to that offer in their letter brief, unfortunately, is likely to diminish Lupin's ability and/or willingness to offer such compromises in the future.

Respectfully Submitted,

*/s/ John C. Phillips, Jr.*

John C. Phillips, Jr. (No. 110)

cc: All Counsel of Record (via CM/ECF and email)