# EXHIBIT D

# Patent Case Management Judicial Guide

## Second Edition (2012)

Peter S. Menell
*Robert L. Bridges Professor of Law*
*Berkeley Center for Law & Technology*
*University of California, Berkeley School of Law*

Lynn H. Pasahow
*Fenwick & West LLP*

James Pooley
*Deputy Director General, Innovation and Technology Sector*
*World Intellectual Property Organization*

Matthew D. Powers
*Tensegrity Law Group LLP*

Steven C. Carlson
*Fish & Richardson*

Jeffrey G. Homrig
*Kasowitz, Benson, Torres & Friedman LLP*

in collaboration with

| | | |
|---|---|---|
| David S. Bloch | | Jeremy Bock |
| *Winston & Strawn LLP* | | *Berkeley Center for Law & Technology* |
| Carolyn Chang | Samuel F. Ernst | Rebecca Charnas Grant |
| *Fenwick & West LLP* | *Covington & Burling LLP* | Leeron G. Kalay |
| | | *Fish & Richardson* |
| Marc David Peters | Clem Roberts | Patricia Young |
| Colette R. Verkuil | *Durie Tangri* | *Kasowitz, Benson, Torres* |
| Anita Choi | | *& Friedman LLP* |
| Kimberly N. Van Voorhis | | |
| Michael R. Ward | | |
| *Morrison & Foerster LLP* | | |

## Federal Judicial Center

This Federal Judicial Center publication was undertaken in furtherance of the Center's statutory mission to develop educational materials for the judicial branch. While the Center regards the content as responsible and valuable, it does not reflect policy or recommendations of the Board of the Federal Judicial Center.

**EXHIBIT D**

Electronic copy available at: http://ssrn.com/abstract=2114398

© 2012 Peter S. Menell, Lynn H. Pasahow, James Pooley, Matthew D. Powers, Steven C. Carlson, and Jeffrey G. Homrig

email: pmenell@law.berkeley.edu

A print version of the *Patent Case Management Judicial Guide* (2d ed. 2012) is available through Lexis.

**EXHIBIT D**

# Chapter 4
# Discovery

4.1  Controlling Law and Standard of Review
4.2  Scope of Patent Discovery
    4.2.1  Initial Disclosures
    4.2.2  Requests for Production of Documents
    4.2.3  Interrogatories
    4.2.4  Depositions
    4.2.5  Protective Orders—Handling of Confidential Documents
        4.2.5.1  Over-Designation of Confidential Documents
        4.2.5.2  Claw-Back Provisions For Privileged Documents
        4.2.5. 3  Prosecution Bars
    4.2.6  Foreign Discovery Issues
4.3  Claim Construction and Discovery
4.4  Electronic Discovery
4.4.1  Overview of Electronic Discovery
4.4.2  Electronic Discovery in Patent Cases
    4.4.2.1 Spoliation in Patent Cases
4.4.3  Issues with Specific File Types in Electronic Discovery
4.5  Management of Discovery Disputes
4.6  Common Discovery Motions
    4.6.1  Discovery Regarding Patentee's Pre-Filing Investigation
    4.6.2  Production of Information About Products
    4.6.3  Contentions About Infringement, Invalidity, and  Unenforceability
    4.6.4  Bifurcation or Stay of Discovery Pending Re-examination of Patent
    4.6.4.1  Overview of the Re-examination Process and New Review Procedures Created by the AIA
    4.6.4.2  Considerations in Bifurcating or Staying  Discovery Pending Re-examination or AIA Review Procedures
    4.6.5  Bifurcation or Stay of Discovery Pending Early DispositiveMotion
    4.6.6  Bifurcation or Stay of Discovery on Issues Bifurcated for Trial
    4.6.7  Privilege Waiver Based on Defendant's Election to Rely on Advice of Counsel
    4.6.8  Discovery from Patent Prosecution Counsel
    4.6.9  Access to Confidential Information by Patent Prosecution Counsel
    4.6.10  License Agreements and Other Third-Party Confidential Information
    4.6.10.1  Discovery Regarding Prior License and Settlement Negotiations
Appendix 4.1 Table, Circuit Court's Approach to Sanctions for Spoliation
Appendix 4.2 Model Order Regarding E-Discovery in Patent Cases

    Discovery in patent cases can be exhaustive and exhausting for a variety of structural reasons. First, patent claims and defenses are commonly broad, justifying deep inquiry into product development and financial records. This aspect is only magnified by the emerging emphasis on electronic discovery. Not surprisingly, many technology companies make extensive use of digital technology. Second, patent litigation comes freighted with special issues such as willfulness and inequitable conduct, where concerns over privilege and work product complicate these already difficult matters. Third, the potentially consequential but unpredictable outcome—large damage awards, the possibility of an injunction—leads counsel to demand every piece of data and sometimes to avoid compromise in discovery disputes.

EXHIBIT D

*Patent Case Management Judicial Guide*

### 4.2.5. 3  Prosecution Bars

Sometimes a party's litigation counsel also represented—and continues to represent—that party in preparing and prosecuting patent applications in the PTO. In such cases, a protective order that restricts access to sensitive documents to "litigation counsel" offers faint protection to the other party, whose sensitive information might be used—unintentionally—to the competitor's advantage in prosecuting on-going patent applications. To address this concern, courts often include in the protective order a "prosecution bar" that prohibits any attorney prosecuting patents for a party from viewing the confidential information of the party's opponents. Similarly, courts often bar any attorney who has viewed a party's confidential information from preparing or prosecuting patent applications that use or otherwise benefit from the attorney's having viewed the information or from prosecuting applications for a period of years that are related to the same technological subject matter of the patent dispute. Section 4.6.9 discusses motion practice relating to prosecution bars.

The Federal Circuit recently addressed the standard that lower courts should apply in determining when an unacceptable risk of inadvertent disclosure of highly confidential information arises. In doing so the Federal Circuit returned to the guiding principles of prosecution bars enunciated in *U.S. Steel Corp. v. United States*, 730 F. 2d 1465 (Fed. Cir. 1984).

In *In re Deutsche Bank*, 605 F.3d 1373 (Fed. Cir. 2010), the Federal Circuit considered whether a trial counsel who also routinely prosecuted patent applications for his client should be exempted from a prosecution bar. The lower court permitted the lead trial counsel to view highly confidential documents and exempted him from the prosecution bar. The Federal Circuit held that the parties must make specific showings regarding the scope of the bar and any exceptions to be made to the bar. The party seeking imposition of the bar must show a nexus between the scope of the bar and the risk of inadvertent disclosure. The party seeking an exemption from the bar must show on a counsel-by-counsel basis: (1) that counsel's representation of the client in matters before the PTO does not and is not likely to implicate competitive decision making related to the subject matter of the litigation so as to give rise to a risk of inadvertent use of confidential information learned in litigation, and (2) that the potential injury to the moving party from restrictions imposed on its choice of litigation and prosecution counsel outweighs the potential injury to the opposing party caused by such inadvertent use. 605 F.3d at 1381.

Recently, several courts have followed the practice of refusing to extend prosecution bars to prosecution activities during reexamination proceedings. *Document Generation Corp. v. Allscripts, LLC et al.*, 2009 U.S. Dist. LEXIS 52874 (E.D.Tx. 2009); *Kenexa Brassring Inc. v. Taleo Corp.*, U.S. Dist. LEXIS 12002 (D. Del. 2009). These courts reason that reexamination does not pose the same risks as other types of prosecution because patent claims may only be narrowed

**EXHIBIT D**

during reexamination. These decisions may not reflect the realities of some reexamination practices. Although patent claims may not be broadened during reexamination proceedings, an attorney with knowledge of a competitor's highly sensitive information may use that information (perhaps inadvertently) to fashion the narrower claims in a way to avoid key prior art while capturing a competitor's product (or future product). Thus, as this example illustrates, reexamination proceedings are not immune from the pitfalls of competitive decision making inherent in patent prosecution. In light of the Federal Circuit's *In re Deutsche Bank* ruling, a more thorough approach for determining whether reexamination activities should be included within a prosecution bar would be to apply the standard set forth by the Federal Circuit for each attorney who might participate in the reexamination activity.

### 4.2.6 Foreign Discovery Issues

It is becoming increasingly common for foreign discovery issues to arise in patent litigation. In part this is because of globalization—not only manufacturing but also research and development are now increasingly performed abroad—and in part this is because the American patent system is perceived to offer advantages that other jurisdictions do not, including strong protection for intellectual property and the availability of broad discovery.

Of course, when a foreign entity is a party to the litigation, discovery may be had through Fed. R. Civ. P. 33-36, just as with any other party. But frequently the party will be a subsidiary of a foreign entity that is not a party, perhaps because of jurisdictional issues. The issue then arises of whether the documents, information, and witnesses of the foreign parent are within the "possession, custody, and control" of the subsidiary. Under the "control" prong, courts may find that documents in the possession of a foreign parent, subsidiary, or affiliate company are in the "control" of the party. For example, a party has been found to "control" the documents at issue when it can ordinarily obtain them in the usual course of its business from the foreign entity. *See, e.g., Alcan Int'l Ltd. v. S.A. Day Mfg. Co., Inc.*, 176 F.R.D. 75, 79 (W.D.N.Y. 1996); *Afros S.P.A. v. Krauss-Maffei Corp.*, 113 F.R.D. 127, 129-32 (D. Del. 1986).

If a foreign entity is not a party, discovery may still be sought through a letter rogatory, or a letter of request to a foreign or international tribunal, under 28 U.S.C. § 1781. International treaties, such as the Hague Convention on Taking of Evidence Abroad in Civil or Commercial Matters, or the Inter-American Convention on Letters Rogatory, provide a procedure whereby the district court can request the assistance of a foreign tribunal. Not every country is a treaty signatory and many signatory countries have taken advantage of the ability to "opt-out" of the requirement to provide certain types of discovery. Article 23 of the Hague Convention permits signatory countries to make a declaration or a reservation that

**EXHIBIT D**